# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL F. SUHADOLNIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10-3021 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant/Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL F. SUHADOLNIK, and | ) | |
| JAMES A. YAGOW, | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

The Court now considers Defendant/Counterclaimant United States' Motion for Summary Judgment Against Plaintiff Michael F. Suhadolnik (the "Motion"). For the reasons stated below, the Motion is DENIED IN PART AND ALLOWED IN PART.

1

# I. INTRODUCTION

The Internal Revenue Code requires an employer to deduct and withhold income and social security taxes from the wages paid to employees. <u>See</u> 26 U.S.C. §§ 3102(a) and 3402(a); <u>see also</u>, <u>Slodov v. United States</u>, 436 U.S. 238, 242-43 (1978). These so-called "trust fund taxes" (a/k/a "withholding taxes"), which include amounts owed under the Federal Insurance Contributions Act (FICA), are for the exclusive use of the United States and are not to be used as working capital for the business or to pay the employer's business expenses, including payroll. 26 U.S.C. §§ 3102(b), 3403, 7501(a); <u>see also</u> <u>United States v. Energy Resources Co., Inc.</u>, 495 U.S. 545, 546-47 (1990) (since federal law requires employers to keep these funds in "trust for the United States" pursuant to 26 U.S.C. § 7501(a), the funds are commonly referred to as "trust fund" taxes). Employers are required to report the amount of withheld taxes on a payroll tax return (Form 941). <u>See</u> 26 C.F.R. § 31.6011(a)-4(a)(1). A Form 941 payroll tax return must be filed every calendar quarter and is generally due on the last day of the first month

following the quarter.  See 26 C.F.R. § 31.6071(a)-1(a).  When employers fail to pay trust fund taxes, the United States is deprived of that revenue and incurs an unfunded Social Security and Medicare liability.  Therefore, 26 U.S.C. § 6672 provides that:  "[a]ny person required to collect, truthfully account for and pay over such tax, . . . shall . . . be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."  Id.

The United States (the "Government") informed Mr. Suhadolnik that he is liable for trust fund recovery penalties assessed against him as a result of the nonpayment of withholding taxes owed for employees of Mr. Suhadolnik's now defunct company, CX Construction of Central Illinois, Inc. ("CX").  Mr. Suhadolnik responded by suing the Government, arguing that he has no liability and is actually entitled to a $938.96 refund (plus interest and costs) for taxes the Government wrongly collected.  The Government counterclaimed against Mr. Suhadolnik and James Yagow (an accountant who formerly worked for CX), pursuant to 26 U.S.C. § 7401.  The Government alleged the men were jointly and

severally liable for CX's failure to pay trust fund liabilities from July 1, 2005, though December 31, 2007, in the amount of $263,628.71, plus interest.

## II.  BACKGROUND[1]

Mr. Suhadolnik founded Construx Construction of Central Illinois ("Construx") in the late 1970s and grew the company into a business with multiple related corporations, including Crazy Horse Concrete ("Crazy Horse"), CDG Architects ("CDG"), and Superior Walls. Construx experienced a financial decline and went bankrupt.  In 2005, Mr. Suhadolnik founded CX and served as its chief executive officer. Due to concern that his personal creditors would interrupt CX's business activities if he was designated as CX's owner, Mr. Suhadolnik made his wife, Maureen Suhadolnik, the owner of CX.

From its start, CX had limited capital, no operating line of credit, and no contracts to perform work.  There were doubts as to CX's

---

[1]  The Court largely adopts the facts as set forth by the Government in its Motion (d/e 25).  However, the Court also incorporates any genuine issue of disputed material fact set forth in Suhadolnik's responsive brief (d/e 28).

financial viability.  CX did not garner a significant contract until 8 months after the company was created.  Mr. Suhadolnik was not paid a salary for his work at CX.  However, he agreed to pay former Construx employees Bill Shomidie, Jack Davis, and Jim Yagow salaries comparable to those they received while working for Construx.  During their time at CX, accountants Mr. Shomidie and Mr. Yagow each earned approximately $112,500.00 annually while Mr. Davis—who handled CX's operations—earned less.  Mr. Suhadolnik also hired Kim Brockhouse, Chrissy Simpson, and Gwen Hilligoss as part of CX's support staff.[2]

Mr. Suhadolnik knew that certain employees periodically went without pay.  CX reported a loss every year it was in operation.

While Maureen Suhadolnik was CX's nominal owner, Mr. Suhadolnik was the one who generated business, met with customers and designers, estimated projects, organized time schedules, monitored the

---

[2]  Mr. Suhadolnik suggests that Mr. Shomidie, Mr. Yagow and Ms. Brockhouse misappropriated funds.  See d/e 28 at 39.  Those allegations are unsubstantiated and irrelevant to Mr. Suhadolnik's liability under § 6672.  As such, they will not be further addressed.

progress of projects, and met with field staff, hired and fired employees, was a signatory on one of CX's two bank accounts, reviewed CX's income tax returns, decided where to locate the company's office, set agendas, and directed the payment of certain bills. Mr. Suhadolnik also set CX's financial policy and scrutinized its expenses. He was CX's ultimate authority.

Although Mr. Suhadolnik was informed at various points that CX had substantial outstanding payroll tax obligations for a period spanning July 1, 2005, though December 31, 2007, he failed to pay the taxes. Instead, he used CX's funds to pay the company's rent and other expenses.

CX struggled financially, but Mr. Suhadolnik nevertheless used assets to subsidize his wife's business—a Gold's Gym fitness center—,his other companies, and his personal legal battles. In January 2008, after the State of Illinois and the Internal Revenue Service (IRS) began investigating why CX had not paid its withholding taxes, Mr. Suhadolnik failed to pay CX's past due federal withholding taxes even though the

company had approximately $375,000 in revenue that year.

Mr. Suhadolnik specifically requested that withholding taxes be addressed at CX's weekly meetings, but he never requested updates about the withholding taxes when employees included them in the reports. The IRS appeared as an agenda item for at least one of the weekly meetings and a number of CX's employees recalled discussing the unpaid withholding taxes on various occasions. Moreover, Mr. Suhadolnik was presented with various balance sheets also showing substantial amounts of liability for FICA and federal withholdings.

Rather than pay CX's taxes, Mr. Suhadolnik paid payroll and other CX expenses. He paid his wife more than $19,000. He also started a new construction business called CXP Construction of Central Illinois, allegedly to avoid the effect of an IRS levy. To keep CX's operations intact, Mr. Suhadolnik personally directed that certain expenses, including rent, legal costs, and an approximately $5,000 payment on a 2005 personal loan at the Bank of Springfield be paid.

Despite CX's financial straits, Mr. Suhadolnik decided not to lay

off employees.  He continued to pay Mr. Shomidie, Mr. Yagow, and Mr. Davis through the end of December 31, 2007.  Funds from Gold's Gym (Gold's) and Crazy Horse were used to pay CX employees.  Mr. Shomidie and Mr. Yagow each received approximately $3,000 from Gold's and Ms. Brockhouse received $1,200 from Gold's.  Furthermore, Mr. Shomidie and Mr. Yagow each received about $1,500 from Crazy Horse while Ms. Brockhouse was paid some $600 from Crazy Horse.

Mr. Suhadolnik knew that CX advanced certain sums to Gold's, and a $50,000 liability due to CX from Gold's appeared on a 2006 tax return Mr. Suhadolnik reviewed.  In 2007, Maureen Suhadolnik received no fewer than 12 CX paychecks totaling $8,422.44 even though she did no work for CX.  The checks were allegedly made out to Mrs. Suhadolnik because Mr. Suhadolnik could not receive payments due to his creditor situation.  Beyond this, Mr. Suhadolnik permitted CX to pay more than $20,000 to the law firm Murphy & Hourihane, LLC despite the fact that the firm did no work for CX.

In January 2008, the Illinois Department of Revenue contacted Mr.

Suhadolnik concerning CX's failure to pay Illinois withholding taxes.  In February 2008, Mr. Suhadolnik met with the IRS regarding serious problems with CX's payroll taxes.  Thereafter, Mr. Suhadolnik incorporated a business called CXP Construction of Illinois, Inc. ("CXP").  He allegedly did this to avoid an IRS levy on CX's assets and to keep the IRS from reaching any account receivables which CX might receive from the Spruce Estates job in Chatham, Illinois.  A $3,000 check made out to CX was deposited into CXP's bank account.  Later, another $10,000 in CXP's earnings was paid to the Suhadolniks.

Whatever money may have been available to him, Mr. Suhadolnik made no voluntary payments towards CX's back withholding taxes.  He did this even though in 2008, CX averaged more than $50,000 in revenue for the first 6 months and over $375,000 in total annual revenue.  Of that money, $160,000 was used for salaries, $19,000 was paid to Maureen Suhadolnik, and $70,000 was used for miscellaneous expenses.  Mr. Suhadolnik contends that he was unable to satisfy his liabilities and went into personal bankruptcy on August 14, 2008.

Mr. Suhadolnik did not pay trust fund taxes for the quarters ending September 30, 2005, through December 31, 2007. Pursuant to 26 U.S.C. § 6672 (which allows for "trust fund" recovery liability), a delegate of the Secretary of the Treasury of the United States made assessments against Mr. Suhadolnik for his allegedly willful failure to collect, account for, and pay over taxes due and owing for CX's employees. The taxable periods, assessment dates, and amounts assessed were as follows:

| Taxable Period | Assessment Date | Assessment Type | Assessed Amount | Balance as of 2/8/10 |
|---|---|---|---|---|
| 9/30/05 | 12/15/08 | Trust Fund Taxes | $17,441.61 | $14,733.54 |
| 12/31/05 | 12/15/08 | Trust Fund Taxes | $18,976.80 | $20,632.22 |
| 3/31/06 | 12/15/08 | Trust Fund Taxes | $21,180.03 | $23,063.94 |
| 6/30/06 | 12/15/08 | Trust Fund Taxes | $28,692.81 | $31,272.43 |
| 9/30/06 | 12/15/08 | Trust Fund Taxes | $39,826.36 | $43,430.37 |
| 12/31/06 | 12/15/08 | Trust Fund Taxes | $33,618.34 | $36,568.13 |
| 3/31/07 | 12/15/08 | Trust Fund Taxes | $23,604.28 | $25,744.56 |
| 6/30/07 | 12/15/08 | Trust Fund Taxes | $6,876.83 | $7,307.24 |
| 9/30/07 | 12/15/08 | Trust Fund Taxes | $27,835.14 | $30,627.57 |
| 12/31/07 | 12/15/08 | Trust Fund Taxes | $28,135.61 | $30,627.57 |
| TOTAL owed as of February 8, 2011 = $263,628.71 | | | | |

On or about the date of each assessment listed above, a delegate of the Secretary of the Treasury of the United States gave notice of the assessment to and made a demand for payment upon Mr. Suhadolnik. Mr. Suhadolnik could have instructed his subordinates to pay over CX's trust fund taxes, but he never did so.

In 2008, Mr. Suhadolnik decided to end CX as a business without ever collecting the outstanding $50,000 loan to Gold's. CX assets were sold in 2008, including its office equipment, shop equipment, tools, and furniture. The proceeds were used to pay insurance and other expenses. The money was not used to pay CX's past-due withholding tax liabilities.

On January 27, 2010, Mr. Suhadolnik sued the Government and asked the Court to find that he has no trust fund liability and is entitled to a $938.96 refund (plus interest and costs) for taxes the Government wrongly collected. On February 16, 2011, former CX accountant James Yagow stipulated to his liability regarding trust fund violations in the amount of $259,916.81, plus statutory additions and interest. See d/e 23. On February 17, 2011, the Government filed the instant Motion

seeking to hold Mr. Suhadolnik liable for $263,628.71 in trust fund liabilities, plus interest. The Government also asks the Court to dismiss Mr. Suhadolnik's refund claim because Mr. Suhadolnik has not met the jurisdictional requirements for a refund. Mr. Suhadolnik filed a responsive brief (d/e 28). In it, he admits that he did not pay the trust fund taxes, but he argues that he should not be held liable because he delegated the task of paying CX's trust fund taxes to Mr. Shomidie and Mr. Yagow. The Government filed a reply brief (d/e 29). The matter is ripe for a decision.

## III. JURISDICTION & VENUE

The Government is seeking unpaid taxes and is defending against Mr. Suhadolnik's refund claim. Since the Government is a party to the litigation, the Court has jurisdiction pursuant to 28 U.S.C. §§ 1345, 1346(e), and 26 U.S.C. § 7402(a). Because Mr. Suhadolnik resides in Springfield, Illinois, he is within the Court's jurisdiction and venue is appropriate here. See 28 U.S.C. § 1391(b).

## IV.  STANDARD OF REVIEW

A court may grant summary judgment only if the "pleadings, the discovery, and discovery materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  The movant bears the burden of establishing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 252.

In deciding a motion for summary judgment, a court can only consider sworn statements based on personal knowledge and other evidence that would be admissible at trial under the Federal Rules of

Evidence.  Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301

F.3d 610, 613 (7th Cir. 2002).  The evidence is viewed in the light most

favorable to the non-movant and "all justifiable inferences are to be

drawn in his favor." Anderson, 477 U.S. at 255, 106 S.Ct. 2505.

Summary judgment is inappropriate when alternate inferences can be

drawn from the evidence, as the choice between reasonable inferences

from facts is a jury function. Id.; Spiegla v. Hull, 371 F.3d 928, 935 (7th

Cir. 2004).  However, conclusory allegations do not create issues of fact

which forestall summary judgment.  See Sublett v. John Wiley & Sons,

Inc., 463 F.3d 731, 740 (7th Cir. 2006) ("it is . . . axiomatic that a

plaintiff's conclusory statements do not create an issue of fact").

## V.  ANALYSIS

The Court will first consider Mr. Suhadolnik's refund claim.  The

Court will then determine Mr. Suhadolnik's trust fund liability.

### A.  Mr. Suhadolnik Can Assert a Refund Claim.

The Government argues that Mr. Suhadolnik's refund claim should

be dismissed for lack of jurisdiction.  The jurisdictional requirements for

a refund claim are contained in 28 U.S.C. § 1346(a)(1).  While the United States typically has sovereign immunity from lawsuits, there has been a waiver of this immunity to the limited extent of a tax refund suit pursuant to § 1346(a)(1).  See Lighthall v. C.I.R., 948 F.2d 1292 (7th Cir. 1991) (table opinion).

Generally, a court only has jurisdiction over a refund claim if a taxpayer has fully paid the relevant tax.  See Flora v. United States, 357 U.S. 63 (1958).  However, for a refund claim pertaining to a divisible tax such as the withholding taxes at issue here, a taxpayer must prove that he paid the taxes for one employee for one quarter.  See Lighthall, 948 F.2d 1292, citing Steele v. United States, 280 F.2d 89 (8th Cir. 1960) (a taxpayer assessed under § 6672 need only pay the divisible amount of the penalty assessment attributable to a single individual's withholding before filing a refund claim).

Mr. Suhadolnik asserts that on December 31, 2008, he erroneously paid and the Government wrongfully collected $938.36 pursuant to § 6672.  See d/e 1.  He specifies that he paid this amount with respect to

quarterly taxes owed for nine CX employees (Christina Vahnying, Stan Searchy, Teodoro Rivera, Michael Ruby, Jared White, Robert Davis, Karl Karins, Travis Cline, and Chy Searchy).  See d/e 28.  Mr. Suhadolnik also alleges that he engaged in the necessary IRS administrative review process before filing his refund claim.  Id.  These factual allegations are sufficient to fulfill the jurisdictional requirements of a § 6672 refund claim.  See Lighthall, 948 F.2d 1292.

The Government fails to offer evidence that proves Mr. Suhadolnik did not: (1) pay the taxes during the period in question; and (2) complete the IRS' administrative review process.  Therefore, the Government is not entitled to summary judgment on Mr. Suhadolnik's refund claim.  While this is not the result the Government sought, this holding actually inures to its benefit.  Had there been no valid § 6672 refund claim, the Court might lack subject matter jurisdiction over the Government's counterclaim.  See Boynton v. United States, 566 F.2d 50 (9th Cir. 1977) (courts lack subject matter jurisdiction over United States' § 6672 counterclaim if plaintiff failed to establish a valid refund claim); see also,

Turk v. United States, 1993 WL 402902 (N.D.Ind. (Apr. 23, 1993))

(recognizing disagreement between the Fifth and Ninth Circuit Court of

Appeals regarding the rule announced in Boynton).

### B.  Mr. Suhadolnik is Liable for the Trust Fund Taxes

IRS tax assessments are presumptively correct.  See United

States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002).  Once the IRS

introduces evidence of an assessment, a taxpayer has the burden of

proving by a preponderance of the evidence that the assessment is

erroneous.  See Pittman v. C.I.R., 100 F.3d 1308, 1313-14 (7th Cir.

1996).

Here, the IRS assessed unpaid taxes against Mr. Suhadolnik

pursuant to 26 U.S.C. § 6201, et seq.  The Certificates of Assessments,

Payments, and Other Specified Matters, Form 4340 ("Certificates of

Assessment") filed with the Government's Motion are sufficient to prove

the IRS's assessments against Mr. Suhadolnik for the periods in question.

See United States v. Davenport, 106 F.3d 1333, 1336, n.4 (7th Cir.

1997); Eugene G. Ziobron, Inc. v. United States, 1998 WL 879526 (7th

Cir. 1988); <u>United States v. Hart</u>, 1989 WL 69882 (C.D.Ill. Jan. 5, 1989). Therefore, the burden shifts to Mr. Suhadolnik to prove the assessments are erroneous. <u>See</u> <u>Pittman</u>, 100 F.3d at 1313-14.

Mr. Suhadolnik argues that the assessments are erroneous because they wrongly assert that he willfully failed to pay withholding taxes. Mr. Suhadolnik contends that because he reasonably expected Mr. Shomidie and Mr. Yagow to pay the taxes, he cannot be liable due to their failure to pay.

Employers cannot escape liability through such a "delegation" defense. <u>See</u> <u>United States v. Charlton</u>, 2 F.3d 237, 240 (7th Cir. 1993) (delegating responsibility over taxes or dispersals to another officer or employee is not a defense to responsibility under § 6672). As stated earlier, § 6672 provides that: "[a]ny person required to collect, truthfully account for and pay over such tax, . . . shall, . . . be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." <u>See</u> 26 U.S.C. § 6672. "A person is responsible under section 6672 if he retains sufficient control of

corporate finances that he can allocate corporate funds to pay the corporation's other debts in preference to the corporation's withholding tax obligations." See Bowlen v. United States, 956 F.2d 723, 728 (7th Cir. 1992). Nonpayment of trust fund taxes results in liability equal to the amount of unpaid trust fund taxes, against any person who: (1) was required to collect, truthfully account for or pay over the employment taxes; and (2) who, in that capacity, willfully failed to collect, truthfully account for or pay over the trust fund taxes. Id. at 727.

The evidence shows that Mr. Suhadolnik was CX's CEO and de facto owner. He had the authority to collect and pay trust fund taxes. Since he hired employees, determined their salaries, established CX's financial policies, led weekly meetings where tax issues were discussed, reviewed balance sheets and income tax returns, prioritized expenses, and was a signatory on one of CX's bank accounts, Mr. Suhadolnik was a responsible person under 26 U.S.C. § 6672.

Because Mr. Suhadolnik was a "responsible person" under § 6672, he bears liability if he "willfully" failed to collect, truthfully account for,

or pay over the withholding taxes. A "responsible person" is deemed to have acted "willfully" if he "either knew the taxes were not being turned over to the government and nonetheless opted to pay other creditors, or recklessly disregarded a known risk that the taxes were not being paid over." United States v. Kim, 111 F.3d 1351, 1357 (7th Cir. 1997). If a "responsible person" has knowledge of a trust fund tax delinquency and pays other creditors after gaining such knowledge, his actions are considered willful. See Thomas v. United States, 41 F.3d 1109, 1114 (7th Cir. 1994).

A "responsible person" can also be held liable if he: "(1) clearly ought to have known that; (2) there was a grave risk that withholding taxes were not being paid; and (3) he was in a position to find out for certain very easily." Wright v. United States, 809 F.2d 425, 427 (7th Cir. 1987). Liability also attaches if a "responsible person" acted with "recklessness" in failing to pay withholding taxes. Id. at 428. Such "recklessness" is proven by showing that a "responsible person" failed to "correct mismanagement after being notified that the withholding taxes

have not been duly remitted." See Running v. United States, 7 F.3d 1293, 1299 (7th Cir. 1993).

CX was an undercapitalized company as of the date Mr. Suhadolnik began it in 2005. Although CX had no major contracts for the first several months of its existence, Mr. Suhadolnik paid six-figure salaries to numerous employees from CX's inception. The company suffered financial losses every year in was in operation.

On no fewer than six occasions, Mr. Suhadolnik was presented with evidence that CX was not paying its payroll taxes. Four balance sheets (dated June 30, 2006, July 30, 2006, December 31, 2006, and December 31, 2007) and the tax returns completed in February 2006 and June 2007 all showed overdue withholding taxes ranging from $10,000 to $50,000. Mr. Suhadolnik made no effort to pay the past due withholding taxes even though he specifically asked for weekly reports on tax deposits. Rather than have withholding taxes paid, Mr. Suhadolnik allowed disbursements for CX's operating expenses and subsidized his other companies. He used CX's funds to pay salaries, a $20,000 legal

bill, an $8,000 payment to his wife, a $50,000 loan to his wife's gym, and a $5,000 payment on a personal loan. Mr. Suhadolnik did this even though CX's balance sheets and tax returns showed tax liabilities.

In early 2008, after he became aware that the Illinois Department of Revenue and IRS were investigating the unpaid payroll taxes, Mr. Suhadolnik still failed to pay withholding taxes. Although CX earned some $375,000 in 2008 and its tax liabilities were well known to Mr. Suhadolnik, CX's money was used to pay almost $250,000 in salaries and miscellaneous expenses rather than any past-due withholding taxes. While Mr. Suhadolnik contends that he had to use CX's money to pay those expenses and there would have been no annual earnings in 2008 if he failed to satisfy payroll and other obligations, such an argument overlooks the fact that CX could have eliminated positions or found other means of containing costs while making some effort to satisfy trust fund taxes. Mr. Suhadolnik made no effort to pay the taxes and he made other obligations a higher priority. The law does not allow that type of prioritization. See Kim, 111 F.3d at 1357.

Furthermore, after Mr. Suhadolnik created his new company, CXP, he deposited money earned by CX into accounts controlled by CXP in an attempt to shield that money from CX's liabilities. Similarly, when CX's assets were sold, Mr. Suhadolnik did not use any proceeds to pay overdue taxes. Beyond this, there is the evidence of Mr. Suhadolnik's failure to collect the $50,000 loan he made to his wife's gym.

The foregoing conduct is reckless with respect to § 6672. See Wright, 809 F.2d at 427. As such, Mr. Suhadolnik bears liability for the § 6672 trust fund tax violations alleged by the Government.

## VI. CONCLUSION

THEREFORE, Defendant/Counterclaimant United States' Motion for Summary Judgment Against Plaintiff Michael F. Suhadolnik is DENIED as to the dismissal of his refund claim and ALLOWED insofar as it seeks a judgment obligating Michael F. Suhadolnik to the United States in the amount of $263,628.71, plus interest from February 8, 2011. Out of concern for the resources of all involved, the Court orders the Government to file an additional pleading which states whether it

intends to continue to contest Mr. Suhadolnik's $938.36 refund claim (and associated costs) or whether that amount will be conceded and deducted from the more than $263,628.71 judgment allowed herein. The Government's brief is due June 14, 2011. Mr. Suhadolnik shall respond by June 21, 2011. The Government's reply is due June 28, 2011.

IT IS SO ORDERED.

DATED:   June 1, 2011

ENTERED BY:                                    s/ Sue E. Myerscough
                                                       SUE E. MYERSOUGH
                                                       U.S. DISTRICT JUDGE